```
         IN THE UNITED STATES DISTRICT COURT FOR THE
              WESTERN DISTRICT OF PENNSYLVANIA

                                      )
                                      )
KARL E. GARY, OSCAR R. IAMS;          )
SHIRLEY J. IAMS; CHARLES W.           )
PHILLIPS; DAVID HIGGENBOTHAM,         )
JUDITH HIGGENBOTHAM; MARY ANN         ) C.A. No. 05-1438
NEELY; CHARLES AMBROSE WHITLATCH,     )
JR.; DEBORAH ANN WHITLATCH,           ) Judge David S. Cercone
WHITLATCH; DONALD WHITLATCH;          )
FRANCIS E.WHITLATCH; HENRY ABNER      ) Magistrate Judge
WHITLATCH; NORMA JEAN WHITLATCH;      ) Francis X. Caiazza
ROBERT PHILLIPS; WILLIAM H.           )
WHITLATCH; KATHY L. WHITLATCH;        )
ALFRED S. CHAMBERS AS POWER OF        )
ATTORNEY FOR GARY J. PIERSON,         )
ALFRED R. CHAMBERS, JR.;              )
ALFRED R. CHAMBERS AS POWER OF        )
ATTORNEY FOR WINIFRED J. PIERSON;     )
PAUL R. PHILLIPS; BARBARA             )
SWARTZMILLER; CHARLES E. WHITLATCH;   )
PATRICIA WHITLATCH; NETTIE PHILLIPS   )
MORRIS; EDNA PHILLIPS SCHRADER;       )
VIRGINIA KENNEDY; HELEN KELLY;        )
MARY THORNE; and KENNETH L.           )
PHILLIPS,                             )
               Plaintiffs,            )
                                      )
          v.                          )
                                      )
                                      )
THE BRADDOCK CEMETERY COMPANY, AND    )
CONSOL ENERGY, the successor and/     )
or assign of RHEINBRAUN, U.S.         )
CORPORATION; and CNX COAL, the        )
successor and/or assign of CONSOL     )
PENNSYLVANIA COAL COMPANY;            )
                                      )
                                      )
               Defendants.            )
```

**REPORT AND RECOMMENDATION**

**I. Recommendation**

In this action filed pursuant to 42 U.S.C. §1983 and the Pennsylvania and U.S. Constitutions, the Plaintiffs allege that their rights were violated when the Defendants, "clothed with the

state's power of eminent domain," effected a taking of their support interest in land underlying cemetery plots located in Braddock Cemetery, Greene County, Pennsylvania. The Defendants' Motions to Dismiss pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) (Doc. 6) and (Doc. 20) are pending. Under the principles of the <u>Rooker-Feldman</u> doctrine, this court lacks subject matter jurisdiction over the Plaintiffs' claims. As a result, the Rule 12(b)(1) motions should be granted.

## II. **Factual and Procedural Background**

This case proves the axiom that "the wheels of justice grind slowly." The underlying facts, which are straightforward and largely undisputed, have occupied state courts since March 1991 when the first of four consolidated claims was filed. The court revisits these facts in order to provide context for its conclusions of law.[1]

In 1857, Mr. and Mrs. James H. Braddock conveyed to the ruling elders of the Unity Presbyterian Church an unrestricted deed to a two and one-quarter acre parcel of land in Greene County, Pennsylvania. In 1902, Braddock and his second wife, Belle, deeded to the same grantees a second parcel of land. Excluded from this second grant was a seam of coal known as the "Pittsburgh vein", which ran under a portion of the land and had previously been conveyed to another party.

In 1916, the Braddock Cemetery Company was established as a

---

[1] The facts are drawn principally from the November 5, 2001 Opinion of the Court of Common Pleas of Greene County denying the Plaintiff's motions for post-trial relief. (Doc. 16 Ex. F).

non-profit corporation. In 1920, the two parcels of land originally owned by James Burke, were conveyed by the Unity Church to the Braddock Cemetery with the stipulation that the property be used exclusively as "a cemetery and place of sepulcher for the dead." The Cemetery operated without significant incident for many years.

The seeds of this litigation were sown in 1981 when the Cemetery's directors and officers leased the Pittsburgh vein to Defendant Consol's predecessor, Conoco, Inc. Under the terms of this lease, the coal company was authorized to mine the vein via the long-wall method, without the obligation to maintain support for the land above, or to correct possible subsidence. In return, the coal company committed to repair any damage caused by the mining, including the cost of removing and reinterring remains, paying the Cemetery $70,000.00 for grounds maintenance and upkeep, and giving the Cemetery the option to purchase an adjoining tract of land for a nominal price.

Mining began in February 1991 and lasted less than two weeks. During and for about three months following the mining operation, the surface of the cemetery subsided more than three feet. This subsidence was even and not noticeable. There was no evidence of damage to grave markers, vaults, or any other part of the cemetery. The operation of the cemetery was not interrupted or altered.

Some of those who had purchased or whose relatives had purchased burial plots in the Cemetery prior to the mining

operation were unhappy with the excavation. Complaining that they had not been notified that mining could or would take place, the Plaintiffs filed suit in the Court of Common Pleas for Greene County. They challenged the Cemetery's right to execute a lease or subsidence agreement with the coal company, and alleged state law violations on the part of all defendants. Cross-motions for summary judgment were filed.

All liability issues were resolved by these summary judgment motions. The coal company was found liable for: 1) trespassing; 2) violating relevant mining laws; 3) inducing breach of contract, trust and fiduciary duty; and 4) infliction of emotional distress. The Cemetery was found to have breached a trust, a contract, and fiduciary duties. The court then held a nine day jury trial confined to the issue of damages. At the close of the evidence, the jury was instructed that damages could be calculated based on the value of the coal taken from the cemetery. Using this measure, the jury assessed damages against the coal company and the Cemetery. The Defendants' post-trial motions were denied.

An appeal followed. The Pennsylvania Superior Court determined that the jury's damage award should not have been based on the value of coal extracted, because the Plaintiffs did not own the mineral rights to their burial plots. The Court also found that the Court of Common Pleas erred in granting summary judgment in favor of the Plaintiffs on a number of claims. Accordingly, the Superior Court reversed the order of the Court

of Common Pleas, and remanded the matter for a new trial encompassing liability and damages. The Plaintiffs' application for reargument before the Superior Court,[2] their request for permission to appeal to the Supreme Court of Pennsylvania, and their motion for reconsideration of the Supreme Court decision precluding appeal were denied.

On March 13, 2000, a second trial began in the Court of Common Pleas for Greene County. After three weeks, the jury reached a verdict in favor of the Defendants. The Court, in an opinion addressing the Plaintiffs' motions for post-trial relief (Doc. 16 Ex. F), summarized the jury's reasoning as follows: "There is no loss to the plaintiffs until or unless the . . . mining of the coal and subsidence were inconsistent with the plaintiffs' use of their lots for burial purposes. The jury made no such findings." Id., at 10. The Court explained:

> The jury, after a three-week trial and after hearing that there was no visible damage to the cemetery and that the sale of lots and burials had continued up to at least the time of trial, and after hearing that no one, plaintiff or otherwise, had requested the transfer of the remains of his or her loved one to another cemetery, found that whatever

---

[2] In this application, the Plaintiffs make an argument very similar to the one advanced here: "The [Superior] Court cannot acknowledge that [Plaintiffs] own the support, that support has a value, but deny [Plaintiffs] compensation for the taking of their support." (Doc. 16 at 9). "This ruling amounts to a state sanctioned taking by coal companies of all support estates in this Commonwealth in violation of the Due Process Clause of the United States and Pennsylvania Constitutions." Id. at 10 (footnote omitted). The Plaintiffs mischaracterize the Superior Court's position. The Superior Court found that the Plaintiffs held "an easement for burial purposes and nothing more." Id. at 16. Their support interest did not extend beyond what was necessary to avoid interference with that easement. Id.

>     subsidence had occurred did not interfere with
>     the reasonable and proper enjoyment of the
>     lots as burial sites.

Id. at 9

    Following the Court's denial of post-trial relief, the Plaintiffs filed a second appeal, raising seventeen issues, with the Superior Court of Pennsylvania. In the appellate brief (Doc. 16 Ex. G), the Plaintiffs again raised the constitutional issue which was considered by the Court of Common Pleas and is the focus of the federal complaint: "[I]f the jury's verdict were to stand as a result of the trial court's denial of [the Plaintiffs'] post-trial motions, then the trial court will have effected a *de facto* condemnation of [the Plaintiffs'] support estate, entitling [them] to just compensation under the Fifth Amendment." Id. at 18. The Superior Court addressed this argument as it did in the first appeal, writing: [T]he cemetery lot owners had easements and the right of support and left to the jury the task of determining whether the mining interfered with the . . . easements, i.e. whether [Plaintiffs] suffered damages from the loss of support." (Doc. 4-1 at 11). Because the jury in the second trial concluded that their interest in the land was not damaged, the Plaintiffs were not entitled to compensation.

    The Superior Court affirmed the order of the Court of Common Pleas and refused to reconsider its ruling. The Supreme Court of Pennsylvania declined to hear the Plaintiff's appeal, and it, too, refused to reconsider its decision. The federal complaint, filed on October 15, 2005, followed.

### III. Discussion

#### A. The Federal Complaint

The claims set out in the federal complaint were raised and resolved in the state court proceedings.[3] The Plaintiffs justify their attempt to relitigate these arguments by contending that when the Supreme Court of Pennsylvania denied their petition for reconsideration, it "clothed the Defendants under color of state law with the authority to take private property without just compensation." (Doc. 1 ¶ 64). In order for the court to accept this theory, it would be required to re-examine and reject the state courts' decision that the Plaintiffs were not deprived of any property interest in the Braddock Cemetery plots. The court lacks jurisdiction to undertake this re-examination.

#### B. The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine provides that "federal courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992 (alteration in original). The doctrine, in essence, prohibits federal courts from exercising jurisdiction over cases that are "the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143,149 (3d. Cir.

---

[3]The court notes that the names of the plaintiffs in the state and federal actions do not overlap precisely. Neither party argues that the outcome of the pending motions turns on the identity of the plaintiffs, or that the federal plaintiffs were not in privity with the state court plaintiffs.

2004)(citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). This functional equivalence exists in two circumstances: 1) where the claim raised in federal court was actually litigated in state court; or 2) where the federal claim is inextricably intertwined with the state adjudication. In this case, functional equivalence exists under either test.

This court has cited portions of the record in the state proceedings which demonstrate that the Plaintiffs' constitutional claims were raised and considered. It is clear that the state courts resolved these claims in favor of the Defendants, finding that there was no cognizable interference with any of the Plaintiffs' property interests.

Even had the constitutional claims not been raised explicitly in the state proceedings, the result under the Rooker-Feldman doctrine would be the same; this court lacks jurisdiction because the state and federal claims are inextricably intertwined. Under Rooker-Feldman, a federal court lacks subject matter jurisdiction when, in order to grant the relief sought, the federal court must conclude that the state court's judgment in a prior proceeding was entered in error, or "must take action that would render the state judgment ineffectual." Maran, 376 F.3d at 150 (quoting FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). The claims raised in this court fall squarely within the parameters of Rooker-Feldman.

In both state and federal court, the Plaintiffs have alleged

an unconstitutional taking of property. The Superior Court of Pennsylvania, in the course of the second state court appeal, held that there was no taking. In order for this court to find for the Plaintiffs, it would have to conclude that they <u>were</u> deprived of a property right,[4] a finding which would directly contradict the state court's holding. Consequently, pursuant to the <u>Rooker-Feldman</u> doctrine, this court lacks subject matter jurisdiction over each of the Plaintiffs' claims.[5]

### III. <u>Conclusion</u>

Because the <u>Rooker-Feldman</u> doctrine establishes that the court lacks subject matter jurisdiction over claims raised in the complaint, the Defendants' Motions to Dismiss pursuant to Fed. R.

---

[4] In order to state a constitutional claim under Section 1983, a plaintiff must establish an underlying constitutional violation. <u>Curley v. Clem</u>, 298 F.3d 271, 277(3d Cir. 2002). The Plaintiffs have failed to make this threshold showing. Even had the Plaintiffs established that they were deprived of a constitutional right, they could not proceed under Section 1983 because the deprivation did not involve state action. The argument that a state court judgment can transform private actors into state actors by "clothing them with the power of eminent domain" is entirely without support. The state claim fares no better. The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution. <u>Farrell v. County of Montgomery</u>, Civ. No. 0593, 2006 WL 166519 at * 1 (E.D. Pa. Jan. 18, 2006). Had this complaint not been subject to dismissal under Fed. R. Civ. P. 12(b)(1), it would have been dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

[5] The Plaintiffs seek to avoid the impact of the <u>Rooker-Feldman</u> doctrine by arguing that they do not seek to overturn the state court judgment, but, instead, seek to enforce it. According to the Plaintiffs, the Superior Court held that the Plaintiffs owned the support interest in burial plots, that they were deprived of that interest by the actions of the Defendants, and that the state court decisions authorized this taking of property without compensation. This argument, as this court has explained, mischaracterizes the Superior Court's holding.

Civ. P. 12(b)(1) (Doc. 6) and (Doc. 20) should be granted.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 19, 2006. Responses to objections are due by June 15, 2006.

May 17, 2006

S/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc:

Louis M. Tarasi, Jr., Esq.
C. William Kenny, Esq.
Tarasi, Tarasi & Fishman, P.C.
510 Third Ave.
Pittsburgh, PA 15219

Roger L. Puz, Esq.
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222

Jerri Ryan Kent, Esq.
Joseph A. Katarincic, Esq.
Thorp, Reed & Armstrong
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219