IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KARL E. GARY, OSCAR R. IAMS;
SHIRLEY J. IAMS; CHARLES W.
PHILLIPS; DAVID HIGGENBOTHAM,
JUDITH HIGGENBOTHAM; MARY ANN
NEELY; CHARLES AMBROSE WHITLATCH,
JR.; DEBRA ANN WHITLATCH,
WHITLATCH; DONALD WHITLATCH;
FRANCIS E.WHITLATCH; HENRY ABNER
WHITLATCH; NORMA JEAN WHITLATCH;
ROBERT PHILLIPS; WILLIAM H.
WHITLATCH; KATHY L. WHITLATCH;
ALFRED S. CHAMBERS AS POWER OF
ATTORNEY FOR GARY J. PIERSON,
ALFRED R. CHAMBERS, JR.;
ALFRED R. CHAMBERS AS POWER OF
ATTORNEY FOR WINIFRED J. PIERSON;
PAUL R. PHILLIPS; BARBARA
SWARTZMILLER; CHARLES E. WHITLATCH;
PATRICIA WHITLATCH; NETTIE PHILLIPS
MORRIS; EDNA PHILLIPS SCHRADER;
VIRGINIA KENNEDY; HELEN KELLY;
MARY THORNE; and KENNETH L.
PHILLIPS,
          Plaintiffs,

v.

THE BRADDOCK CEMETERY, AND
CONSOL ENERGY, the successor and/
or assign of RHEINBRAUN, U.S.
CORPORATION; and CNX COAL, the
successor and/or assign of CONSOL
PENNSYLVANIA COAL COMPANY;

          Defendants.

C.A. No. 05-1438

Judge David S. Cercone
Magistrate Judge Caiazza

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

It is recommended that Defendants' Motions for Sanctions pursuant to Fed. R. Civ. P. 11 (Docs. 38 and 44) be granted.

## II. REPORT

### A. Background

The factual and procedural history of this case is recited in this Court's Report and Recommendation (Doc. 31), and need not be reiterated here.[1] That being said, previous statements of the relevant facts are incorporated by reference and are elaborated upon here only as is necessary.

The Defendant Braddock Cemetery Company ("Defendant" or "the Cemetery")was established in 1916, and operated for many years without incident. In 1981, the Cemetery's directors and officers leased a seam of coal running under the Cemetery to Defendant Consol's ("Consol") predecessor, Conoco, Inc. This litigation arises out of a two week mining operation in 1991. Thereafter, Plaintiff Karl E. Gary ("Gary"), along with some other purchasers of burial plots (collectively "Plaintiffs"), sued the Cemetery and Consol (collectively "Defendants") in the Court of Common Pleas of Greene County, Pennsylvania, challenging the Cemetery's right to execute a lease or subsidence agreement with the mining company, and alleging various violations of state law that purportedly interfered with the ground support of their burial plots resulting in the subsidence of those plots.

---

[1] The facts, as recited in this Court's Report and Recommendation (Doc. 31), were drawn principally from the November 5, 2001 Opinion of the Court of Common Pleas of Greene County denying Plaintiffs' motions for post-trial relief. (Doc. 16, Ex. F). In addition, the Third Circuit Court also provided a concise statement of relevant facts in its recent opinion. See Gary v. Braddock Cemetery, 517 F.3d 195, 198-200 (3d Cir. 2008).

All liability issues were resolved in favor of the Plaintiffs based on summary judgment motions. The state court conducted a nine day jury trial limited to the issue of damages. At the close of testimony, the jury was instructed that damages might be calculated based on the value of the coal taken from beneath the Cemetery. Accordingly, the jury assessed damages against Consol and the Cemetery.

On appeal, the Pennsylvania Superior Court determined that the damages award should not have been based upon the value of the coal extracted from the Cemetery because the Plaintiffs did not own the mineral rights to the burial plots. The Court also found that the Court of Common Pleas erred in granting summary judgment in favor of Plaintiffs on a number of claims. In sum, the Superior Court reversed the Order of the Court of Common Pleas, and remanded the case for a new trial encompassing liability as well as damages.

As we summarized in our Report and Recommendation, on retrial, the Court of Common Pleas explained the jury's finding in favor of the Defendants as follows:

> The jury, after a three week trial and after hearing that there was no visible damage to the Cemetery and that the sale of lots and burials had continued up to at least the time of trial, and after hearing that no one, Plaintiffs or otherwise, had requested the transfer of the remains of his or her loved on to another cemetery, found that whatever subsidence had occurred did not interfere with the reasonable and proper enjoyment of the

>lots as burial sites.

(Doc. 31 at pp. 5-6).

The Plaintiffs filed post-trial motions in which they argued, inter alia, that allowing the verdict to stand would amount to an uncompensated "taking" of their property. The trial court rejected the claim and Plaintiffs appealed to the Pennsylvania Superior Court, raising seventeen issues in their brief. The Superior Court, too, rejected their arguments, and affirmed the Order of the Court of Common Pleas. The Supreme Court of Pennsylvania refused allocatur, and the Plaintiffs did not request a writ of certiorari from the United States Supreme Court to raise their Fifth Amendment "taking" claim. Instead, they filed the instant suit under 42 U.S.C. § 1983.

In their federal action the Plaintiffs argued that the Supreme Court of Pennsylvania's denial of their petition for reconsideration, "clothed the Defendants under color of state law with the authority to take private property without just compensation." They claimed that the Defendants' actions resulted in an unconstitutional "taking" of their "support estates" in violation of the United States and Pennsylvania Constitutions.

Consol and Braddock Cemetery responded by serving Plaintiffs with a copy of the Motions for Rule 11 sanctions they intended to

file pursuant to Fed. R. Civ. P. 11(c)(1).[2] Explaining the basis of their sanction requests, Consol and Braddock Cemetery cited the Rooker-Feldman doctrine; Consol also cited the lack of any state action as required for a lawsuit pursuant to § 1983, the bar of the applicable statute of limitations, and the doctrines of collateral estoppel and res judicata. Because the Plaintiffs did not voluntarily dismiss their Complaint as requested in the Rule 11 notices, Consol and Braddock Cemetery both filed a Motions to Dismiss together with their Motions for Rule 11 Sanctions.[3] (Doc. 6).

The case was referred to this court. At a status conference, Consol and Braddock Cemetery were advised that this court would deny their Rule 11 Motions, without prejudice to their right to renew that motion after a ruling on the Motion to Dismiss. (Doc. 27). Subsequently, this court issued its Report and Recommendation (Doc. 31) finding that not only was Plaintiffs' suit barred under the Rooker-Feldman doctrine, but also that they could not maintain a suit under § 1983 because the purported injuries were not a result of state action. The district court subsequently adopted the Report and Recommendation and dismissed the Complaint. (Doc. 35). The Plaintiffs appealed.

---

[2] Fed. R. Civ. P. 11(c)(1) requires a litigant to give advance notice of the intent to move for sanctions by properly serving the opposing party with a copy of the motion prior to filing with the court.

[3] The Cemetery also filed a Motion to Dismiss. (Doc. 20).

Thereafter, on July 11, 2006 Consol renewed its Motion for Rule 11 Sanctions (Doc. 38), and this court ordered the Plaintiffs to respond by August 3, 2006. (Doc. 42). On July 21, 2006, Braddock Cemetery also filed a Rule 11 Motion for Sanctions (Doc. 44). However, on July 18, 2006, the Plaintiffs filed their Notice of Appeal (Doc. 41) challenging the district court's dismissal of their Complaint. On July 24, 2006, prior to receiving any response from the Plaintiffs on the Rule 11 Motions, this court issued an order which "temporarily" denied the Rule 11 Motions, stating that they would be stayed pending the resolution of Plaintiffs' appeal. The district court overruled Consol's and Braddock Cemetery's objections in an order dated August 3, 2006. (Doc. 51). Thereafter, Consol filed a Notice of Appeal (Doc. 52) challenging the district court's failure to rule on its Rule 11 Motion before dismissing the Complaint.

In <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195 (3d Cir. 2008), the Court of Appeals for the Third Circuit Court affirmed the district court's dismissal of Plaintiff's action based upon the <u>Rooker-Feldman</u> doctrine. The Court stated, however, that "[r]equiring Rule 11 motions to be filed before final judgment is entered accomplishes nothing unless [the Third Circuit Court is] able to resolve any challenge to the grant or denial of Rule 11 sanctions when [it] rule[s] on the merits of the final judgment."

Id. at 202. The Court instructed that "motions under Rule 11 must be decided in the first instant by the trial court," and, accordingly, remanded the case to the district court to rule on Consol's Rule 11 Motion. Id. at 202-03.

With this history now recited, we turn to the issue of sanctions.

### B. The Applicable Law

Courts are mandated to give the Federal Rules of Civil Procedure their plain meaning. Business Guides v. Chromatic Comm., 498 U.S. 533, 541 (1991) (internal citations omitted). Federal Rule of Civil Procedure 11 sets out the applicable standard counsel and unrepresented parties must satisfy when filing pleadings, motions, or other documents. Whenever an attorney or an unrepresented party files a pleading, written motion, or any other document, he or she is certifying to the best of his or her knowledge, information, and belief, formed after reasonable inquiry under the circumstances, that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary or needless increase in the cost of litigation;
> (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable

> opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Acevedo v. Monsignor Donovan High School, 2006 U.S. Dist. LEXIS 64490, *4-5 (D.N.J. Sept. 11, 2006); FED. R. CIV. P. 11(b). This rule "imposes on counsel a duty to look before leaping" or as a "litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986). Stated somewhat differently, Rule 11 requires that an attorney who files a complaint certify that there is a reasonable basis in fact and law for the claims. The clear purpose of the rule is to discourage the filing of frivolous, unsupported, or unreasonable lawsuits. Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1090 (3d Cir. 1988).

In this Circuit, "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991); *see also*, Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3d Cir. 1988)(holding that "the standard for testing conduct under Rule 11 is reasonableness under the circumstances.")(citing Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987)). "Reasonableness" in the context of Rule 11 has

been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." Ford Motor Co., 930 F.2d at 289; Business Guides, 498 U.S. at 551; CTC Imports & Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991). Significantly, the moving party is not required to make a showing of bad faith. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995). An "empty head, pure heart" excuse cannot be used by the accused party as justification for filing a frivolous lawsuit. Acevedo, 2006 U.S. Dist. LEXIS 64490 at *5-6; *see also*, Langer v. Monarch Life Ins. Co., 966 F.2d 786, 810 (3d Cir. 1992). To comply with the mandates of Rule 11, counsel is required to conduct a "reasonable inquiry into both the facts and law supporting a particular pleading." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 187 n.7 (3d Cir. 2002).

As Plaintiffs claim (see Doc. 62 at p. 7), for purposes of this Motion, it is clear that the question before this court is not whether Plaintiffs' § 1983 action is barred by Rooker-Feldman; that issue was determined by this court and affirmed by the Court of Appeals. Instead, the issue is whether Plaintiffs' counsel reasonably believed that there was a basis for a § 1983 claim in this court. After a review of the record before us as well as the relevant case law and commentary, it is clear that no such grounds existed.

## C. **The Section 1983 Claim**

It is well-established that § 1983 does not provide a plaintiff with substantive rights in and of itself -it merely provides a remedy for violation of the designated federal rights. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617-18 (1979)[4] ; Benckini v. Upper Saucon Twp., 2005 U.S. Dist. LEXIS 23765, *3 (E. D. Pa. Oct. 17, 2005). From a burden of proof perspective, a claim under § 1983 has two prerequisites. First, the conduct of a defendant must deprive a plaintiff of a right secured under the Constitution or laws of the United States. Colburn v. Under Darby Twp., 838 F.2d 663, 667 (3d Cir. 1988). Second, the alleged conduct must be committed by a person acting under color of state law. Id.; *see also* Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005). With respect to the first prerequisite, the Plaintiffs here have alleged that the Defendants' mining activities amounted to an unlawful deprivation of their property rights with respect to certain burial plots at Braddock Cemetery.

Stated summarily, the Plaintiffs base their claim on the Fifth Amendment to the Federal Constitution which forbids the

---

[4] Section 1983 reads as follows:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

taking of private property for public use without just compensation. U.S. Const. Amend. V; *see also* Kelo v. City of New London, 545 U.S. 469, 472 n.1 (2005). The takings clause[5] applies to the states through the Fourteenth Amendment. *See* Kelo, 545 U.S. at 472 n.1 (citing Chicago, Burlington & Quincy R.R. Co. v. Chicago, 166 U.S. 226 (1897)).

In their Response to Defendants' Motion for Sanctions, the Plaintiffs argue that the Pennsylvania state courts never specifically addressed the merits of their constitutional claims. (Doc. 62 at p. 2). As far as it goes, the Plaintiffs argument is accurate. However, even though issues raised in the prior proceedings were not framed in constitutional terms, the state court litigation clearly resolved -both lawfully and factually- any dispute regarding a deprivation of the Plaintiffs' property interest in the burial plots which form the basis of this federal action.

Specifically, the state court litigation resulted in a finding that the purchasers of the burial plots did not acquire a fee simple title. Instead, from a legal perspective, they were granted an easement. (<u>Id</u>. at p. 10). Further detailing their respective rights, the state trial court found that the grantor of the easement, Braddock Cemetery, retained ownership of all

---

[5] "...private property [shall not] be taken for public use, without just compensation."

incidents of ownership not expressly granted, while the grantees -the Plaintiffs in this federal action- obtained only the rights necessary for the reasonable enjoyment of their easements. (Id.). In effect the state trial court found that Braddock Cemetery could "cause or permit the surface to subside as a result of mining *but only to an extent that would not interfere with the use of these lots as burial sites.*" (Id. emphasis added). After a three-week trial, a jury concluded that whatever subsidence had occurred did not interfere with the Plaintiffs' reasonable and proper enjoyment of the plots as burial sites. (Id. at pp. 9-10). Clearly, because the Plaintiffs suffered no deprivation of a property interest, there was no constitutional violation.

On appeal, the Pennsylvania Superior Court addressed the issue, writing: "[T]he Cemetery lot owners had easements and the right of support and left to the jury was the task of determining whether the mining interfered with the easements, *i.e.*, whether [Plaintiffs] suffered damages from the loss of support." (Doc. 62-4 at p. 11). The jury in the second trial concluded that the Defendants did not interfere with the Plaintiffs' easement rights with respect to the use of the plots as burial sites, and, as a result, they were not entitled to any compensation. Stated from a constitutional perspective, considering the relevant law, the fact finder determined that the Plaintiffs had not suffered any deprivation of property rights -unconstitutional or otherwise.

By the time Plaintiffs filed the instant action in federal court -October 17, 2005- it had been long well-established by the state courts that the Plaintiffs had not been deprived of a property interest in the burial plots. There was, therefore, no basis upon which the Plaintiffs could allege a constitutional violation. *See* Colburn, 838 F.2d at 667 and Harvey, 421 F.3d at 189 (the conduct of the defendant must deprive the plaintiff of a right secured under the Constitution or laws of the United States).

### D. The *Rooker-Feldman* Doctrine

Moreover, the Rooker-Feldman doctrine clearly precludes federal review of the Plaintiffs' claims. Under Rooker-Feldman "federal courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." Blake v. Papadukos, 953 F.2d 68, 71 (3d Cir. 1992)(alteration in original). The doctrine, in essence, prohibits federal courts from exercising jurisdiction over cases that are "the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004)(citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). A functional

equivalence exists in two circumstances: (1) where the claim raised in federal court was actually litigated in state court; or (2) where the federal claim is inextricably intertwined with the state adjudication.

Under Rooker-Feldman, a federal court lacks subject matter jurisdiction when, in order to grant the relief sought, the federal court must conclude that the state court's judgment in a prior proceeding was entered in error, or "must take action that would render the state court judgment ineffectual." Marran, 376 F.3d at 150 (quoting FOCUS v. Allegheny Country Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)).

Here, the federal claim is inextricably intertwined with the state proceeding. In both the state and federal court, the Plaintiffs alleged an unlawful taking of their property. The state court proceeding concluded with a determination that was fatal to the Plaintiffs' federal claim - there was no deprivation of property rights with respect to the burial plots and, as a clear consequence, there was no constitutional violation. That said, a finding by this federal court concluding that the Plaintiffs were deprived of a property right in the burial plots would require a determination directly contradicting the state court's holding.[6] Consequently, pursuant to the

---

[6] Plaintiffs' Response to the Motion for Sanctions (Doc. 62) relies heavily upon FOCUS. Plaintiffs, in fact, go so far as to quote from the decision, emphasizing that determining whether Rooker-Feldman applies "requires determining exactly what the state court held." (Id. at p. 8)(quoting FOCUS, 75 F.3d at 840). It is abundantly clear that the state

mandates of the Rooker-Feldman doctrine, this court lacked subject matter jurisdiction over the Plaintiffs' claims -a fact that the Plaintiffs knew -or should have known- when they commenced this federal action.[7]

### III. SUMMARY

The purpose of Rule 11 is to "target []abuse, making sanctions appropriate only if the filing of the complaint [or other paper] constitute[s] abusive litigation or misuse of the court's process." Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994)(internal quotations and citations omitted); Ford Motor Co., 930 F.2d at 289; Gaiardo, 835 F.2d at 483. Stated differently, "Rule 11 is aimed at curbing the abuses of the judicial system, and is intended to discourage the filing of frivolous, unsupported, or unreasonable claims." Tally v. City of Atlantic City New Jersey, 2007 U.S. Dist. LEXIS 49486, *10 (D.N.J. July 10, 2007).

In order to demonstrate that a filing was not frivolous, unsupported, or abusive, counsel must show that there was a

---

courts found that the Plaintiffs had not been deprived of any property interest. As recognized in our initial Report and Recommendation, continued arguments to the contrary mis-characterize the Superior Court's holding. (Doc. 31 at p. 9 n.5).

[7] As noted earlier, all § 1983 claims require two components: (1) an underlying constitutional or statutory violation; and (2) state action. Plaintiffs' briefs dedicated a great deal of space to arguments concerning a modification or extension of existing law governing state action. However, because we find that Plaintiffs' cannot meet the first prong of the § 1983 test, we need not address the second prong.

"reasonable investigation of the facts and a normally competent level of legal research to support the presentation" of a claim. Lieb, 788 F.2d at 157. Significantly, the extent to which the legal claim or theory of the party opposing sanctions has been judicially endorsed in other cases -even in dissent- is evidence that the position is warranted by existing law. Gaiardo, 835 F.2d at 485-86.

Here, Plaintiffs' counsel claims to have conducted a lengthy and exhaustive investigation of the factual and legal basics of the asserted claims. (Doc. 62 at pp. 3-4). Citing authority from other circuits, as well as commentary from numerous legal scholars, counsel suggests that the Rooker-Feldman doctrine be abandoned, or at least "pared back to its irreducible core." *See* Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 4469.1 at 160; *see generally* Doc. 62 at pp. 7-11. Moreover, the Plaintiffs point out that even the Third Circuit Court has emphasized that an analysis of the Rooker-Feldman doctrine requires an exacting review of the state court decision. FOCUS, 75 F.3d at 840.

The Rooker-Feldman doctrine aside, had Plaintiffs' counsel conducted an "exacting review" of the prior litigation, it should have become obvious that at day's end the state courts found that the Plaintiffs were not deprived of a property right in the burial plots. Consequently, there were no facts upon which they could base a constitutional claim.

In addition, Plaintiffs cite a litany of legal authority concerning the application and possible extension of state action jurisprudence in a myriad of contexts. (*See generally* Doc. 62 at pp. 11-15). Counsel suggests that, although an extension of the law to cover the facts of this case might be against the weight of authority, arguments to that effect do not merit sanctions. *See* Fed. R. Civ. P. 11 and Advisory Committee Notes to 1992 Amendments (Where there is "some support for [counsel's] theories even in minority opinions, in law review articles," this supports a finding that the arguments are nonfrivolous.). We do not, however, have occasion here to reach the state action requirement of a Section 1983 action because the Plaintiffs cannot show an underlying constitutional violation - a deprivation of their property interests- in support of their § 1983 claim.

### IV. **THE RECOMMENDED SANCTION**

It is well-established that Rule 11 Sanctions are warranted only in "exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous." Ford Motor Co., 930 F.2d at 289. Moreover, a review of Third Circuit case law reveals that a court should refuse to impose sanctions unless, as here, the moving party can show a complete lack of factual or legal support for a claim. *See, e.g.,* Schering Corp. v. Vitarine Pharm., Inc., 889 F.2d 490 (3d Cir. 1989); Pensiero v. Lingle, 847 F.2d 90 (3d

Cir. 1988). Rule 11 Sanctions, parenthetically, are never appropriate when a party's "only sin was being... unsuccessful." Arab African International Bank v. Epstein, 10 F.3d 168, 175 (3d Cir. 1995); Teamsters Local Union No. 430, 841 F.2d at 68. That said, the Court, although it has strained to find otherwise, is unable to identify a theory or reasonable extension of existing law that would support this lawsuit against the Defendant.

Once a court determines that Rule 11 has been violated, it retains broad discretion in determining appropriate sanctions. Langer, 966 F.2d at 811. The court must impose sanctions that are "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Tally, 2007 U.S. Dist. LEXIS at *12; Balthazar v. Atlantic City Med. Ctr., 137 Fed. Appx. 482, 490 (3d Cir. 2005); FED. R. CIV. P. 11(c)(2).

As already stated, the court has strained to find some legal basis for this federal claim filed by the Plaintiffs but has found none. That said, the court recognizes that there is an emotional component attached to this case which explains the legal maneuvering that has kept this case breathing for more than fifteen years. Perhaps the reason for its marathon journey lies somewhere beyond any protection afforded by law. A cemetery's serenity is sacrosanct and when its peace is disturbed voices –at times with no legal remedy– rise in protest. For far too long, however, this battle has been waged and it is now time to remove

this case from its life support system so that the souls of the departed buried in the Braddock Cemetery can rest in peace.

For these reasons, the court finds that monetary sanctions are inappropriate and the public filing of this document is a sufficient sanction. To be sure, the court does not encourage the filing of frivolous lawsuits. But, under these limited facts, the imposition of monetary sanctions would be inappropriate.[8]

## V. CONCLUSION

For the reasons stated above, it is recommended that the Defendants' Motions for Sanctions pursuant to Fed. R. Civ. P. 11 (Docs. 38 and 44) be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 26, 2008. Response to objections are due by July 7, 2008.

---

8. Although the first trial resulted in a substantial money verdict for the Plaintiffs, the potential monetary relief was reduced significantly after the Pennsylvania courts defined the proper measure of damages.

June 10, 2008                          s/Francis X. Caiazza
                                       Francis X. Caiazza
                                       U.S. Magistrate Judge

cc: all parties of record